```
         IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF ALABAMA
                  SOUTHERN DIVISION
```

LARRY PETERSON,              }
                             }
    Plaintiff,               }
                             }    CIVIL ACTION NO.
v.                           }    CV-09-AR-2620-S
                             }
UNITED PARCEL SERVICE,       }
                             }
    Defendant.               }

## MEMORANDUM OPINION

Plaintiff, Larry Peterson ("Peterson"), sues United Parcel Service ("UPS"), his former employer, claiming that it violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, ("Title VII"). Before the court is UPS's motion for summary judgment. (Doc. 18.) For the reasons stated below, UPS's motion will be granted in its entirety.

### FACTS

Because of the procedural posture, all arguably admissible evidence is considered in the light most favorable to Peterson.

UPS is a package delivery business that operates throughout the world. (Doc. 19 at 3.) In the U.S., UPS organizes its package operations by district. (*Id.*) Peterson, a black male, worked in the Alabama District at the UPS Package Center in Roebuck throughout his employment with UPS. (*Id.*) The Alabama District consists of all UPS operations in the State of Alabama and the Florida panhandle.

1

(*Id.*)

Peterson was hired by UPS in April 1994, as a part-time employee in the company's Roebuck package facility. (Doc. 19 at 3.) In May 2001, Peterson became a full-time Package Car Driver. (*Id.*) As a Package Car Driver, Peterson operated the familiar brown delivery trucks ("package car"), and was responsible for the delivery and pickup of packages from customers on assigned delivery routes. (*Id.* at 4.)

After five (5) years as a Package Car Driver, Peterson was promoted to the position of On-Road Supervisor in May, 2006. (*Id.*) As an On-Road Supervisor, Peterson supervised approximately thirty (30) to forty (40) Package Car Drivers. (*Id.*) He was responsible for training Package Car Drivers on the proper operation of the package car and for ensuring that Package Car Drivers provided good customer service and followed UPS policies and procedures. When necessary, Peterson was responsible for covering the delivery routes of absent drivers. (*Id.*) Peterson's training for On-Road Supervisor included training on UPS's delivery methods, safety, and leadership. (*Id.*)

Peterson was fired on September 17, 2007, by Human Resources Manager, Jeff Poulter ("Poulter"). (*Id.*) UPS claims that Poulter's decision to terminate Peterson was the result of a security investigation of six (6) separate violations by Peterson of UPS's Honesty and Integrity policies. (*Id.* at 7-18.)

On January 9, 2008, Peterson filed a charge with the Equal Employment Opportunity Commission ("EEOC"), claiming that UPS had discriminated against him because of his race by terminating him. Two (2) months after he filed an EEOC charge, Peterson, on March 4, 2008, filed his sixth (6th) bankruptcy petition seeking relief under Chapter 13 of the Bankruptcy Code. Peterson's bankruptcy lawyer was Rebecca Bozeman ("Bozeman"). On October 1, 2009[1], the EEOC mailed Peterson a right to sue letter. Peterson instituted the instant suit on December 30, 2009. (Doc. 1.) In his bankruptcy petition, Peterson was expressly required to list "all suits and **administrative proceedings** to which [he] is or was a party within one year immediately preceding the filing of this bankruptcy case . . . ." (emphasis added)(Doc. 19-5 at 26-32.) The Chapter 13 schedule of assets specifically instructed Peterson to report "**any contingent and unliquidated claims**" of any kind. Peterson never amended the schedules to include his EEOC charge. His Chapter 13 bankruptcy plan was confirmed by the bankruptcy court in October, 2008. (Doc. 19-7.)

Under the confirmation order entered by the bankruptcy court, Peterson was scheduled to make bi-weekly payments of five hundred dollars ($500) to the bankruptcy trustee for sixty (60) months. He failed to make the required payments and was dismissed from the

---

[1] The record only shows when the right to sue letter was mailed, not received, though this is not in dispute.

3

bankruptcy proceeding in March, 2009.

UPS's motion for summary judgment on Peterson's claim argues: 1) that the doctrine of judicial estoppel bars Peterson from pursuing his claim because he failed to disclose the then pending EEOC claim to the bankruptcy court; and 2) that Peterson has not established a *prima facie* case of race discrimination.

## DISCUSSION

### Judicial Estoppel

Judicial estoppel is an equitable doctrine invoked at a court's discretion. *Burnes v. Pemco Aeroplex, Inc.*, 29 F.3d 1282, 1285 (11th Cir. 2002) citing *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). Its purpose "is to protect the integrity of the judicial process by prohibiting parties from deliberately changing their positions according to the exigencies of the moment." *Id.* Courts consider: 1) whether the present position is "clearly inconsistent" with the earlier position; 2) whether the party succeeded in persuading a tribunal to accept the earlier position, so that judicial acceptance of the inconsistent position in a later proceeding creates the perception that either court was misled; and 3) whether the party advancing the inconsistent position would derive an unfair advantage on the opposing party. *Id.* The Eleventh Circuit considers two main factors in the application of judicial estoppel: 1) whether an inconsistent position was made under oath in a prior proceeding; and 2) whether such inconsistency was

4

calculated to make a mockery of the judicial system. *Id.*

Under the controlling law, both a potential and a pending employment discrimination claim is an asset that must be disclosed to the bankruptcy court. *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1274 (11th Cir. 2010). A party's intent to take inconsistent positions, as would merit application of the doctrine of judicial estoppel, can be inferred from the circumstances. *Id.* at 1275. The Eleventh Circuit has held that where a debtor fails to disclose to the bankruptcy court the existence of an employment discrimination claim, while pursuing the claim either in court or **before the EEOC**, the debtor has taken inconsistent positions under oath. (emphasis added) *Robinson*, 595 F.3d at 1275; *DeLeon v. Comcar Indus., Inc.*, 321 F.3d 1289, 1291 (11th Cir. 2003).

Peterson's financial disclosure forms were indisputably submitted under oath to the bankruptcy court. Thus, the court moves to the second prong of the Eleventh Circuit's analysis, intent. Before analyzing the second factor, the court must first address a debtor's duty to disclose under the bankruptcy laws.

A debtor seeking relief under the bankruptcy laws must, as stated, disclose all assets or potential assets to the bankruptcy court. 11 U.S.C. §521(a), and §541(a)(7). Without that information the bankruptcy court cannot act intelligently or fairly. The duty to disclose is a continuing one that does not end once the initial forms are submitted to the bankruptcy court; rather, a debtor must

5

amend his financial statements if circumstances change. *Burnes*, 291 F.3d at 1286; *see also, Ajaka v. Brooksamerica Mortg. Corp.*, 453 F.3d 1339, 1344 (11th Cir. 2006). Bankruptcy courts rely on the accuracy of the debtor's disclosure statements when considering whether to approve a "no asset" discharge. Indeed, "the importance of full and honest disclosure cannot be overstated." *Id.* It is obvious that this plaintiff believed and still believes that his claim has value.

In his response to UPS's judicial estoppel argument, Peterson contends:

> Defendant did not list any of the facts asserted in this [summary judgment] motion related to judicial *estoppel* nor did defendant mention this defense, the bankruptcy, or the schedules. No supplementation was made to defendant's answers. Defendant is just as guilty of inadvertent error on documents as is plaintiff. Defendant should be estopped to raise this as a defense based on the argument Defendant made to this court.

(Doc. 22 at 14.) Peterson is incorrect. UPS asserted "the doctrines of estoppel, waiver, laches, and/or unclean hands" in the fourth defense of its answer. (Doc. 5 at 2.) UPS's "kitchen sink" method of asserting numerous defenses in its answer without specific facts is inconsequential. Because judicial estoppel is discretionary in nature, and because it operates to protect the courts against fraud and abuse, the doctrine may be invoked by a court without having been raised by a party. 18 JAMES WM. MOORE et al., MOORE'S FEDERAL PRACTICE §134.34 (3d ed. 2011); *see also New Hampshire*, 532 U.S. at 750. In this case, it **has** been raised.

Peterson urges the court not to apply judicial estoppel because: 1) he only failed to disclose a pending EEOC charge rather than a pending lawsuit; 2) his failure to disclose his EEOC charge was inadvertent, a fact assumed from the fact that the bankruptcy schedules did not specifically reference EEOC charges; and 3) his inconsistent sworn statements should be ignored because his bankruptcy case was dismissed. Peterson admits that when he lost his job, he "contacted his attorney, Rebecca Bozeman, who informed him that he needed to file an EEOC charge to get his job back." (Doc. 22 at 16.) Bozeman also represented Peterson in the bankruptcy petition at issue. Peterson also testified in his deposition that Bozeman had represented him in connection with three (3) bankruptcy cases in the previous ten (10) years. (Doc. 19 at 21; Doc. 19-2 at 3.) The evidence indisputably demonstrates that Peterson was experienced with bankruptcy from his prior filings, some of which included Bozeman as his attorney. Peterson's inadvertence, if that is what it was, does not save his action because all that is required for judicial estoppel to apply is knowledge of his claim while the bankruptcy was pending and motive to conceal it. *Barger v. City of Cartersville, Ga.*, 348 F.3d 1289, 1294-96 (11th Cir. 2003) (finding that the plaintiff's "knowledge of her discrimination claims and motive to conceal them are sufficient evidence from which to infer her intentional manipulation" and that "failure to comply with the Bankruptcy

7

Code's disclosure duty is 'inadvertent' only when a party either lacks knowledge of the undisclosed claim or has no motive for their concealment"). If Peterson should recover one hundred thousand dollars ($100,000) in this case, where would the money go? Peterson's argument that this omission was the inadvertent error of a layperson is a stretch too far for the court.

Peterson further contends that he did not obtain an unfair advantage when his bankruptcy case was dismissed, strangely saying that the effect of the dismissal is to vest all property of the estate in the entity that had it immediately prior to the bankruptcy petition -— in this instance, himself. (Doc. 22 at 18-19.) The dismissal not only allowed Peterson to get out of paying the five hundred dollars ($500) per month but, according to him, keep every asset he had prior to filing for bankruptcy. A debtor who inadvertently but successfully hides a claim during a bankruptcy proceeding should not be permitted to pursue that claim.

There are other discrepancies in Peterson's submissions. In his initial application for *in forma pauperis* status, he stated under penalty of perjury, that there were no other persons in his household over the age of eighteen (18) who were employed. (Doc. 1 at 2.) At deposition, Peterson testified that his wife lives with him and has been employed by Sungard Solutions for almost five (5) years. (*Peterson depo*. at 18:7-22.) Peterson also failed to disclose Bozeman when required to list each attorney who had

represented him in the last ten (10) years for any purpose. (Doc. 1 at 8.) Whether these errors were other inadvertent omissions, the court finds that they are either not material or are forgivable. At the time of the filing in this court, Peterson was acting *pro se.*

**Prima facie case**

Even if judicial estoppel were not an absolute defense, Peterson's claim fails on the merits because he cannot establish a *prima facie* case of race discrimination. In order to do so, he must show that: 1) he belongs to a protected class; 2) he was subjected to an adverse job action; 3) UPS treated similarly-situated employees outside his classification more favorably; and 4) he was qualified for his job. *McDonnell Douglas Corp. V. Green*, 411 U.S. 792, 802 (1973). The only factor in dispute is whether UPS treated other similarly-situated employees outside the protected class more favorably. Peterson has identified several persons not of his race, who he claims received preferential treatment. Unfortunately, they are not similarly-situated. He has failed to identify a real comparator.

Assuming *arguendo*, that Peterson has established a *prima facie* case of race discrimination, he has failed to proffer that UPS's legitimate, non-discriminatory reason for his termination was a pretext for race discrimination. Simply denying that he violated the honesty and integrity policies as put forward by UPS as its reason does not prove pretext. Thus, Peterson's claim of racial

9

discrimination fails on the merits as a matter of law.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment will be granted. A separate order effectuating this opinion will be entered.

DONE this 8th day of July, 2011.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE